IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01598-REB-CBS

HELENA C. HATCH,

       Plaintiff,

v.

FEDERATED RETAIL HOLDINGS, INC.,
a New York corporation, d/b/a THE MAY
DEPARTMENT STORES COMPANY, and
METROPOLITAN LIFE INSURANCE COMPANY,
a New York corporation,

       Defendants.

---

**MEMORANDUM ORDER REGARDING PLAINTIFF'S
RENEWED MOTION FOR LIMITED DISCOVERY**

---

Magistrate Judge Craig B. Shaffer

      Plaintiff Helena Hatch initiated the instant action to recover long-term disability benefits to which she believes she is entitled as a participant in the Long-Term Disability Plan (hereinafter "the Plan") of The May Department Stores Company. Plaintiff contends that Defendants wrongfully terminated her benefits effective August 15, 2005, based upon the Plan's definition of "totally disabled," which requires a finding that the claimant is "completely unable to perform any and every duty of any job for wage or profit that you are reasonably qualified by education, training or experience to perform." Relying on the Tenth Circuit's decision in *Torix v. Ball*, 862 F.2d 1428, 1431 (10th Cir. 1988), Ms. Hatch asserts that this definition of disability is so unduly restrictive, unreasonable and unconscionable as to render the policy virtually meaningless and the

1

coverage illusory. *See* Complaint, at ¶ 29. To the contrary, Defendants insist that the decision to terminate Ms. Hatch's benefits was neither arbitrary nor capricious, having been based on the terms of the Plan, substantial evidence in the administrative record and independent medical opinions.

On December 27, 2007, Plaintiff filed a Renewed Motion for Limited Discovery, with Authority (doc. # 25).[1] With this motion, Ms. Hatch requests leave to serve six interrogatories and two requests for production of documents. Plaintiff contends that this limited discovery is intended to elicit information regarding "prior interpretations and applications of the specific definitions of disability at issue in this case and any internal policies or guidelines concerning interpretation or application of the said definitions." Not surprisingly, Defendants oppose the requested discovery, arguing that the proposed interrogatories and requests for production are both overbroad and unduly burdensome, and contrary to the fundamental policies governing litigation under the Employee Retirement Income Security Act of 1974 ("ERISA"). This court must once again consider whether, and to what extend, discovery will be permitted in an ERISA action. *See Jeffryes v. The Hartford Life and Accident Insurance Co.*, 2006 WL 1186493 (D. Colo. 2006).

In this case, the parties agree that Defendants' denial of benefits is subject to deferential review by the district court under an arbitrary and capricious standard. Under this standard of review, a plan administrator's decision will be upheld so long as it is predicated on a reasoned basis. *Adamson v. Unum Life Insurance Co. of America*, 455 F.3d 1209, 1212 (10th Cir. 2006).

---

[1] Plaintiff's initial Motion for Limited Discovery, with Authority (doc. # 22) was denied without prejudice for failure to comply with the requirements of D.C.COLO.LCivR. 7.1A.

"Indicia of arbitrary and capricious actions include a lack of substantial evidence, a mistake of law, and bad faith." *Buchanan v. Reliance Standard Life Insurance Co.*, 5 F. Supp.2d 1172, 1180 (D. Kan. 1998). However, the Tenth Circuit, like a majority of other courts, has held that "[i]n determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." *Sandoval v. Aetna Life & Casualty Insurance Co.*, 967 F.2d 377, 380 (10th Cir. 1992). *See also Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999); *Miller v. United Welfare Fund,*, 72 F.3d 1066, 1071 (2d Cir. 1995).

"An administrator's decision is not arbitrary or capricious if it is a reasonable interpretation of the plan's terms and was made in good faith." *Torix v. Ball Corporation*, 862 F.2d at 1429-30 (recognizing that beneficiaries should not lose the benefits they are entitled to as a result of unduly restrictive policy provisions). In *Torix*, the disability provision at issue provided that a plan member was totally disabled when they are "totally and presumably permanently prevented from engaging in any occupation or employment for wages or profit." Following the Eleventh Circuit's reasoning in *Helms v. Monsanto Co.*, 728 F.2d 1416 (11th Cir. 1984), the Tenth Circuit concluded that ERISA's policy objections would be "severely undermined" through a literal reading of this disability definition. The *Helms* decision had recognized that "permanent disability is a question of fact that depends upon all the circumstances of a particular case." *Id.* at 1420. Similarly, the Tenth Circuit held that

> a reasonable interpretation of a claimant's entitlement to payments based on a claim of "total disability" must consider the claimant's ability to pursue gainful employment in light of all the circumstances. The standard to be applied will

>require the claimant to establish a physical inability to follow any occupation from which he can earn a reasonably substantial income rising from the dignity of an income or livelihood, although the income may not be as much as was earned prior to the disability. If the plaintiff meets his burden, recovery may not be denied on the basis of overly restrictive interpretations of the plan's language.

*Torix v. Ball Corporation*, 862 F.2d at 1431.

In this case, the Plan provides that a member is totally disabled if they are "completely unable to perform any and every duty of any job for wage or profit that you are reasonably qualified by education, training or experience to perform." Ms. Hatch insists that this definition of total disability is unduly restrictive in the wake of the *Torix* decision and, therefore, unenforceable. *But see, e.g., Brigham v. Sun Life of Canada*, 317 F.3d 72, 74 (1st Cir. 2003) (held that insurer did not act arbitrarily or capriciously in deciding that claimant was not entitled to continuation of long-term disability benefits under a plan that provided long-term disability benefits only if the disabling condition prevented the member from engaging in "any occupation for which he is or becomes reasonably qualified by education, training or experience"); *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1272 (10th Cir. 2002) (ERISA disability plan defined total disability as an inability "to perform all of the material and substantial duties of any occupation for which [the member] is or becomes reasonably qualified by education, training or experience"); *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 603 (4th Cir. 1999) (holding that a denial of benefits was not an abuse of discretion under a plan that defined total disability as an inability to engage in "each and every occupation or employment for wage or profit for which . . . [the employee] is reasonably qualified by education, training or experience").

To support her argument, Plaintiff seeks to discover information concerning previous interpretations of the Plan's definition of disability and any related internal policies or guidelines.

Plaintiff's Request for Production No. 1 seeks "a complete copy of any policy or guideline concerning interpretation or application of the Plan's definition of "any occupation" disability. For each such document produced, Interrogatory No. 2 wishes to know "the source of such item, the purpose and usage of that source, and the effective dates of such source."[2] Interrogatory No. 3 asks Defendants to state whether, in administering the subject Plan, they have "ever approved a claim for long term disability benefits where the operative Plan definition of 'totally disabled' was 'being completely unable to perform any and every duty of any job for wage or profit that you are reasonably qualified by education, training or experience to perform.'" To the extent that Interrogatory No. 3 is answered in the affirmative, Interrogatory No. 4 requests the "total number of such claims that have been approved and paid." For each claim included in that total, Interrogatory No. 5 would required Defendants to describe "the claimant's illness or injury and the nature and extent of the disability, restrictions and limitations of the claimant, without any information that would permit identification of the claimant," while Request for Production No. 2 would require production of the corresponding claim approval letters. Finally, Interrogatory No. 6 seeks "the total number of claims for long term disability that defendants, in administering the subject Plan, have <u>denied</u> where the operative Plan definition of 'totally disabled' was 'being completely unable to perform any and every duty of any job for wage or profit that you are reasonably qualified by education, training or experience to perform.'" Ms. Hatch contends that this discovery is directed at learning whether Defendants have consistently interpreted and applied

---

[2] As a practical matter, Request for Production No. 1 and Interrogatory No. 2 are not at issue since Defendants state that no internal guideline exists and, therefore, no responsive documents can be produced. *Cf. Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000) (noting that the court "must accept, at face value, a party's representation that it has fully produced all materials that are discoverable").

the pertinent definition of "totally disabled" to other similarly situated claimants. To further support her request for discovery, Ms. Hatch has directed the court to Fifth, Eighth and Eleven Circuit decisions holding that the use of inconsistent interpretations of plan terms may be an indicia of arbitrary and capricious action by a plan administrator. While Defendants have objected to the requested discovery as overbroad and unduly burdensome, I will deny Plaintiff's motion as contrary to Tenth Circuit precedents and the policies underlying ERISA litigation.

In *Wildbur v. Arco Chemical Co.*, 974 F.2d 631, 641 (5th Cir. 1992), the Fifth Circuit held that evidence relevant to the proper interpretation of plan terms should be treated differently from evidence intended to establish a particular historical fact regarding the claimant. In applying the abuse of discretion or arbitrary and capricious standard, the Fifth Circuit envisioned a two-step analysis. The trial court should first determine the legally correct interpretation of the plan. In resolving this issue, the trial court should consider: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. If the court determines that the administrator's interpretation is incorrect, the court must then decide whether the administrator's decision was an abuse of discretion. *Id.* at 637-38. More significantly, for purposes of the instant motion, the Fifth Circuit concluded that

> evidence beyond the administrative record showing inconsistent plan interpretation by the administrator . . . does not implicate . . . the concern . . . that courts would become substitute plan administrators. We therefore conclude that evidence that is relevant in determining whether under our two-step framework, an administrator's interpretation of a plan was legally correct, and if not, whether the administrator abused his discretion, may be considered by a district court even if this evidence was not part of the administrative record.

*Id.* at 642.

The *Wildbur* decision is factually distinguishable from the instant case. In *Wildbur*, the administrative record already contained evidence suggesting that plan administrators had not uniformly interpreted the Atlantic Richfield Retirement Plan and Special Termination Allowance Plan, and had treated similarly situated employees in decidedly different ways. Given the evidence of inconsistent plan interpretations already in the administrative record, the *Wildbur* plaintiffs sought leave to depose plan committee members and Atlantic Richfield's lawyers. The trial court in *Wildbur* concluded that the requested discovery could yield evidence relevant to a determination of the legally correct interpretation of the Atlantic Richfield plans. *Compare Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, 195 F.3d at 982 (suggesting that the holding in *Wildbur* should be limited to those situations where there is an allegation "that the plan's administrator did not do what it said it did;" in all other cases, the mental processes of a plan administrator are not legitimate grounds for inquiry).

Ms. Hatch's Complaint has not alleged or pointed to any evidence in the administrative record suggesting that Defendants have inconsistently interpreted the Plan's definition of "totally disabled." To the contrary, the Complaint contends that the Plan's definition of "disability," as drafted, is unenforceable under *Torix* and that Ms. Hatch, as a factual matter, "clearly qualified as totally disabled" under "any reasonable and permissible definition of total disability." *See* Complaint, at ¶¶ 30 and 33. In light of those allegations, Plaintiff's proposed discovery hints at the type of fishing expedition that is antithetical to the objectives underlying ERISA litigation. *Cf. Westbrook v. Georgia-Pacific Corp.*, 2006 WL 2772822, *4 (E.D. Ark. 2006) (noting that "it is incumbent on ERISA plaintiffs seeking limited discovery to specifically demonstrate to the Court why the discovery is necessary to prove their particular theory and to show that the discovery is

more than a fishing expedition").

More importantly, the Tenth Circuit has expressly rejected the holding in *Wildbur* which would allow a trial court to look beyond the administrative record in reviewing Defendants' interpretation of the Plan. *In Chambers v. Family Health Plan Corporation*, 100 F.3d 818 (10th Cir. 1996), the plaintiff brought an ERISA action alleging that Family Health Plan Corporation had improperly withheld healthcare benefits to cover the cost of a pulmonary-thrombo-endarterectomy ("PTE") procedure. Family Health Plan denied those benefits after determining that the PTE procedure represented an "experimental" treatment that was not covered the plan. Like the instant case, the plan administrator's decision in *Chambers* was reviewed under an arbitrary and capricious standard. Citing the *Wildbur* decision, the plaintiff in *Chambers* argued that whether the PTE procedure was "experimental" turned on the interpretation of plan language, which would permit the trial court to look beyond the administrative record. The Tenth Circuit rejected that argument.

> Determining whether PTE is "experimental" is analogous to deciding whether the plaintiff in [*Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377 (10th Cir. 1992)] was "disabled." Both of these turn on issues of historical fact. Thus even under *Wildbur*, the magistrate judge did not abuse her discretion in limiting the scope of review to evidence presented to FHP on or before its final decision.

*Chambers v. Family Health Plan Corporation*, 100 F.3d at 824. *See also Miller v. United Welfare Fund*, 72 F.3d at 1071 (declining to adopt the "broader scope of review" permitted in *Wildbur*). I believe that this same analysis is dispositive of Plaintiff's request for discovery beyond the administrative record in this case.

Accordingly, for the foregoing reasons, Plaintiff Hatch's Renewed Motion for Limited Discovery, with Authority is denied.

DATED at Denver, Colorado, this 20th day of March, 2007.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge